# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| POSCO Energy Co., Ltd. f/k/a POSCO Power,<br><br>                                          Plaintiff,<br><br>             v.<br><br>FuelCell Energy, Inc.,<br><br>                                          Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff POSCO Energy Co., Ltd. ("PE" or "Plaintiff"), by its attorneys, Arnold & Porter Kaye Scholer LLP ("Arnold & Porter"), for its complaint against defendant FuelCell Energy, Inc. ("FCE" or "Defendant") alleges, on information as to itself and on information and belief as to others, as follows:

## NATURE OF THE ACTION

1.     PE was at one time one of  FCE's largest outside stockholders.  This action arises out of FCE's unjustified delay in removing restrictive legends on shares owned by PE, thereby preventing PE from selling its FCE shares.

2.     Between 2007 and 2012, pursuant to three Securities Purchase Agreements ("SPAs"), PE purchased a total of 30,786,418 restricted shares in FCE in the aggregate amount

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| POSCO Energy Co., Ltd. f/k/a POSCO Power,<br><br>                                        Plaintiff,<br><br>                    v.<br><br>FuelCell Energy, Inc.,<br><br>                                        Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff POSCO Energy Co., Ltd. ("PE" or "Plaintiff"), by its attorneys, Arnold & Porter Kaye Scholer LLP ("Arnold & Porter"), for its complaint against defendant FuelCell Energy, Inc. ("FCE" or "Defendant") alleges, on information as to itself and on information and belief as to others, as follows:

**NATURE OF THE ACTION**

1.      PE was at one time one of FCE's largest outside stockholders.  This action arises out of FCE's unjustified delay in removing restrictive legends on shares owned by PE, thereby preventing PE from selling its FCE shares.

2.      Between 2007 and 2012, pursuant to three Securities Purchase Agreements ("SPAs"), PE purchased a total of 30,786,418 restricted shares in FCE in the aggregate amount of $84,121,624.80 (Eighty four million one hundred twenty one thousand six hundred twenty four dollars and eighty cents).

3.      The stock certificates bore restrictive legends that restricted PE's ability to sell its FCE shares.

4.      Each of the SPAs contained certain representations, warranties, and covenants obligating FCE to facilitate the removal of the restrictive legend from the stock certificates sold pursuant to the SPAs in the event that PE desires to transfer its shares.

2

of $84,121,624.80 (Eighty four million one hundred twenty one thousand six hundred twenty four dollars and eighty cents).

3.  The stock certificates bore restrictive legends that restricted PE's ability to sell its FCE shares.

4.  Each of the SPAs contained certain representations, warranties, and covenants obligating FCE to facilitate the removal of the restrictive legend from the stock certificates sold pursuant to the SPAs in the event that PE desires to transfer its shares.

5.  In an attempt to deny PE of its rights under the SPAs and statutory and common law, FCE continually and wrongfully delayed its removal of restrictive legends on PE's stock certificates, including by unreasonably demanding that PE give up certain of its bargained-for rights under the SPAs in exchange for FCE's agreement to remove the restrictive legends.

6.  As a result of FCE's misconduct and delay, PE was unable to sell its shares as planned, resulting in a loss exceeding $1,000,000.00 (One million dollars).

## JURISDICTION AND VENUE

7.  This Court has federal diversity jurisdiction under 28 U.S.C. § 1332.  FCE is incorporated in Delaware.  Its principal place of business is Connecticut.  PE is incorporated in Korea.  Its principal place of business is Korea.  Therefore, complete diversity of citizenship exists.  The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

8.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  Acts and transactions complained of below have occurred in this District.

3

9.      This action arises out of the transaction of business, commission of tortious injury, and other activities within the Southern District of New York and elsewhere.  PE's claims in this action arise out of PE's acquisition and ownership of its shares of FCE.

10.     FCE purposefully invoked the protections of New York law in the New York choice of law clause in the SPAs.  *See* SPA § 7.3.

11.     Extensive negotiations and drafting of the SPAs took place between FCE and PE through their respective lawyers located in Manhattan. The relevant transactions closed in the offices of FCE's law firm or PE's law firm, which were located in Manhattan, and each party was required to deliver to the other certain necessary documents at the closing in Manhattan.  Representatives of PE and FCE traveled to Manhattan to attend the closing from Korea and Connecticut, respectively.  Furthermore, FCE's annual stockholders' meeting takes place in New York, to which PE was invited to attend and did on occasion attend.  Also, FCE's common stock is listed on the NASDAQ, which is located in New York.  FCE's stock transfer agent, American Stock Transfer, was, at all relevant times, located in New York City.

## THE PARTIES

12.     Plaintiff POSCO Energy Co., Ltd. engages in a wide range of business activities in the energy sector, including the supply of energy, off-gas combined cycle power generation, coal-fired power generation, fuel cell development, renewable energy, and the recycling of resources.  POSCO Energy Co., Ltd was previously named POSCO Power until it changed its name in February of 2012.  PE is Korea's largest independent power producer.

13.     According to its filings with the U.S. Securities and Exchange Commission, Defendant FuelCell Energy, Inc., together with its subsidiaries, is an integrated fuel cell company

Case 1:20-cv-07509   Document 1   Filed 09/14/20   Page 5 of 18

with a global presence in delivering environmentally responsible distributed baseload power solutions through its proprietary, molten-carbonate fuel cell technology. FCE develops turn-key distributed power generation solutions and operates and provides comprehensive service for the life of the power plant.

## **BACKGROUND**

### A.    **PE Purchases Shares in FCE**

14.    Pursuant to three SPAs dated February 7, 2007, June 9, 2009, and April 30, 2012, PE purchased a total of 30,786,418 restricted shares in FCE.

15.    Pursuant to the 2007 SPA, in February 2008, PE purchased 3,822,630 shares in FCE at $7.60 per share at a cost of $29,051,900.00.

16.    Pursuant to the 2009 SPA, in October 2009, PE purchased 6,963,788 shares in FCE at $3.60 per share at a cost of $25,069,638.80.

17.    Pursuant to the 2012 SPA, in April 2012, PE purchased 20,000,000 shares in FCE at $1.50 per share at a cost of $30,000,000.00.

18.    All three agreements are "governed by and interpreted in accordance with the laws of the State of New York." SPA § 7.3.

19.    Each of the agreements contained certain representations and warranties relating to the fact that the stock certificates will bear a restrictive legend because the underlying securities were sold in reliance upon an exemption from registration under the Securities Act, or Regulation S thereunder. The SPAs also contained representations, warranties, and covenants requiring FCE to facilitate the removal of such legend in the event that PE desires to transfer its shares. *See, e.g.*, SPA §§ 3.8, 4.8.

20.   Each of the three SPAs contained an identical § 3.8(a), which states that the certificates representing the shares will bear restrictive legends in substantially the following form:

> THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION OR THE SECURITIES COMMISSION OF ANY STATE OF THE UNITED STATES IN RELIANCE UPON AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") OR REGULATIONS THEREUNDER, AND ACCORDINGLY, MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED, HYPOTHECATED, TRANSFERRED OR ASSIGNED EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER THE SECURITIES ACT OR PURSUANT TO AN AVAILABLE EXEMPTION FROM, OR IN A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS AS EVIDENCED BY A LEGAL OPINION OF COUNSEL TO THE TRANSFEROR TO SUCH EFFECT, THE SUBSTANCE OF WHICH SHALL BE REASONABLY ACCEPTABLE TO THE COMPANY.

21.   Each of the three SPAs also contained an identical § 3.8(b), which states that PE may request that FCE remove, and that FCE agrees to remove, the restrictive legends "if such Shares are eligible for sale without restrictions under Rule 144 or under any no-action letter issued by the SEC."  The same provision further states that "[f]ollowing the time a legend is no longer required for any Shares hereunder, the Company will, no later than five (5) Business Days following the delivery by the Purchaser to the Company or the Company's transfer agent of a legended certificate representing such Shares, accompanied by such additional information as the Company or the Company's transfer agent may reasonably request, deliver or cause to be

delivered to the Purchaser a certificate representing such Shares that is free from all restrictive and other legends."

22.    Each of the three SPAs also contained an identical § 6.6(1), which provides that FCE "shall cooperate" with PE "to facilitate the timely preparation and delivery of certificates (not bearing any restrictive legend) representing the Registrable Securities to be offered pursuant to a Registration Statement and enable such certificates to be in such denominations or amounts, as the case may be, as such Holder may reasonably request and registered in such names as such Holder may request."

23.    Each of the three SPAs also contained an identical § 4.8, pursuant to which FCE covenanted that "[f]rom and after the date hereof, the Company shall use its reasonable best efforts to obtain as promptly as practicable any consent or approval of any Person, including any regulatory authority, required in connection with the transactions contemplated hereby." Accordingly, SPA § 4.8 requires FCE to "use its reasonable best efforts to obtain as promptly as practicable" any consents or approvals required to remove the restrictive legend from the stock certificates upon PE's request, as the SPAs expressly contemplated that the stock PE purchased pursuant to the agreements would eventually be resold.

24.    In addition to the representations, warranties, and covenants relating to the restrictive legends and FCE's obligation to facilitate the removal of such legend in the event that PE desires to transfer its shares, the SPAs also provided PE with certain rights relating to PE's ownership of shares.

25.    Section 4.17 of the 2012 SPA entitles PE to appoint an individual to the Board of Directors of FCE, provided that PE owns a certain number of FCE shares, and that PE's

7

nominee meets the criteria for nomination as a director as set forth in FCE's Nominating and Corporate Governance Committee Charter.

26.    Section 4.15 of the 2012 SPA and 2009 SPA grants PE the right to subscribe to new issuances of FCE's securities, at the price and on the terms stated in any such New Issue Notice.  Section 4.15 further provides notice requirements of the new issuance and sets forth the number of shares of new issuances that PE may purchase.

27.    In addition, each of the three SPAs also expressly state that "covenants contained herein shall survive the execution of this Agreement and the Closing of the transactions contemplated hereby (except to the extent expressly provided in this Agreement)." *See* SPA § 7.13.

28.    As a result of a 1-for-12 reverse stock split in December 2015, PE's ownership interest of 30,786,418 shares was converted into 2,565,534 shares.

29.    In May 2019, FCE executed another 1-for-12 reverse stock split, such that PE currently holds 63,794 shares.

**B.     Delaware Law Requires Issuers to Remove Restrictive Legends Upon Request of the Stockholder**

30.    A stockholder that is issued stock certificates displaying restrictive legends must request the issuance of replacement certificates with the legends removed before the stock can be sold.

31.    Because FCE is incorporated in Delaware, claims made under the Uniform Commercial Code ("UCC") proceed under Delaware law.

32.   Under Delaware law, the rights of stockholders to obtain certificates without restrictive legends are established in 6 *Del. C.* § 8-401 and 8 *Del. C.* § 158.

33.   Section 158 provides that "[e]very holder of stock represented by certificates shall be entitled to have a certificate signed by, or in the name of, the corporation by any 2 authorized officers of the corporation representing the number of shares registered in certificate form."   "By necessary implication this includes the right to a proper certificate without a legend or restriction, where such a legend is no longer appropriate." *Bender v. Memory Metals, Inc.*, 514 A.2d 1109, 1115 (Del. Ch. 1986).

34.   Section 8-401(a) provides for an issuer's obligation to, upon request of a stockholder, register transfer of a security.  Section 8-401 also applies to removal of a restrictive legend because a removal is deemed a registered transfer.  *Id.*

35.   Section 8-401(b) provides for damages for "loss resulting from unreasonable delay in registration or failure or refusal to register the transfer."

C.   **PE Seeks to Sell Certain of Its Shares and FCE Refuses to Remove the Restrictive Legends**

36.   In early 2018, PE became interested in selling certain shares that it had acquired, pursuant to an exemption from registration provided under Rule 144 of the Securities Act of 1933.

37.   The removal of restrictive legends typically occurs quickly and in a matter of days, but FCE delayed the process for months and would not agree to remove the restrictive legends pursuant to its obligations under 6 *Del. C.* § 8-401 and 8 *Del. C.* § 158 and the SPAs, until PE caved to its unreasonable demands, as set forth more fully below.

38.    On June 4, 2018, PE requested that FCE remove the restrictive legends on PE's shares per SPA § 3.8.

39.    On June 5, 2018, FCE informed PE that it had forwarded PE's request to FCE's external counsel for review.

40.    On June 11, 2018, PE again requested that FCE remove the restrictive legends and requested that FCE provide PE with any necessary procedures to remove the restrictive legends.

41.    On June 14, 2018, PE followed up once more by asking FCE to share any documentation required by FCE to remove the restrictive legend.

42.    In response, FCE refused to remove the restrictive legends, despite its obligations to do so under UCC § 8-401, as implemented in Delaware at 6 *Del. C.* § 8-401, and the SPAs.  Instead, FCE peppered PE with a variety of unreasonable and irrelevant requests.

43.    As conditions for removing the restrictive legends, FCE insisted that PE provide written representation that it was not an affiliate of FCE and that PE did not possess material non-public information.

44.    Given that any misuse of material non-public information by a stockholder does not involve the issuer, or create a risk of liability for the issuer, the issuer has no legitimate basis for requiring a representation that a stockholder does not possess any material non-public information.[1]  In any event, there is no authority supporting the requirement of such information

---

[1] Indeed, trading on the basis of material non-public information is not illegal unless obtained in a breach of duty owed to the source of the information.  Regardless, PE was not attempting to trade based on material non-public information.

as a pre-condition of removal.  FCE's request regarding confirmation that PE did not possess material non-public information was clearly a fabricated excuse to delay removal of the restrictive legends.

45.    In the hopes of moving things forward, PE provided FCE with all other documentation FCE requested, including a Rule 144 opinion letter from counsel, and the original share certificates.  FCE still refused to comply with its obligations to remove the restrictive legends.

46.    Despite PE's cooperation, FCE continued to take the wrongful and unreasonable position that it could not remove the restrictive legends unless PE verified that it did not possess material non-public information.  Such an inquiry and condition are completely irrelevant to an issuer being asked to remove a restrictive legend, as an issuer has no duty to police the trades of its shareholders.  FCE used this wrongful and unreasonable condition, and the ensuing dispute over the issue, to continue to delay the removal of the restrictive legends.

47.    PE was eager to proceed with the sales of FCE stock that it had planned months earlier, particularly in light of the fact that FCE's stock price was falling precipitously. From June 4, 2018 to July 3, 2018, FCE's stock price fell from a split-adjusted price of $23.28 to $16.20.  Over the next two months, the price continued to fall, plummeting to $12.72 on September 11, 2018.

48.    Repeatedly insisting that PE could be deemed an affiliate because of its right to appoint a member to the board, and unreasonably delaying the process, as a result, FCE eventually forced PE to waive its bargained-for right to appoint a board designee pursuant to Section 4.17 of the 2012 SPA.  In addition, leveraging PE's urgent desire to sell its shares in

FCE, FCE also strong-armed PE into surrendering its pro rata rights under Section 4.15 of the 2009 and 2012 SPAs.

49.    Despite PE's grave reservations about giving up its bargained-for rights without receiving any additional consideration, it believed it had little choice but to agree to FCE's unreasonable terms in order to salvage what little value remained in its investment.

50.    On July 20, 2018, PE agreed to permanently waive its board appointment rights under Section 4.17 of the 2012 SPA.  PE also reiterated its position that it is a non-affiliate of FCE and had not been an affiliate in the previous 90 days.

51.    FCE continued to drag its feet.  Eager to sell its shares, on August 17, 2018, PE sent FCE a draft waiver letter and a representation letter.  PE removed a representation relating to FCE's request for confirmation that PE is not in possession of material non-public information, due to the fact that such a representation was neither a necessary nor an appropriate condition for the removal of restrictive legends.  Despite its earlier insistence on this representation, FCE did not object to this omission, thereby admitting that this request was a sham.

52.    On August 22, 2018, PE entered into a Waiver Letter (the "Waiver Letter"), pursuant to which it acceded to FCE's demands in order to effectuate the removal of the restrictive legends as expeditiously as possible.

53.    FCE engaged in further dilatory tactics, and failed to remove the restrictive legend from PE's stock certificates for yet another two weeks after the Waiver Letter was signed. FCE's stock transfer agent finally notified PE on or about September 11, 2018 that the stock could now be transferred.  In the end, FCE took at least *three months* to fulfill its obligations as

12

an issuer when honoring PE's bargained-for and statutory rights should have taken it a matter of days.

54.   FCE's motive all along was to delay and discourage PE from selling its shares in FCE.

55.   Following the removal of the restrictive legends, PE sold a total of 1,800,000 shares at prices ranging from $6.72 to $8.51, as soon as it was able to, reducing the number of shares it held to 765,534.

56.   From June 4, 2018 to September 11, 2018, FCE's stock price decreased by over 45%, from $23.28 to $12.72 (adjusted for splits).

57.   As a result, PE realized a loss of over $1,000,000.00 from its inability to sell its shares due to FCE's unjustified and unlawful delays.

## COUNT I

### *(Breach of Covenant Under New York Law)*

58.   PE repeats and realleges the allegations of paragraphs 1-57 of this Complaint as if fully set forth herein.

59.   Paragraph 4.8, which is identical in all three SPAs, provides that "[f]rom and after the date hereof, the Company shall use its reasonable best efforts to obtain as promptly as practicable any consent or approval of any Person, including any regulatory authority, required in connection with the transactions contemplated here-by."

60.   One of the transactions contemplated under the SPAs is the potential transfer of the shares it purchased pursuant to the agreement.

61.   FCE failed to use its "reasonable best efforts" to obtain the consent or approval of removal of the restrictive legends.

62.   Had FCE exercised its "reasonable best efforts" to remove the restrictive legends, PE would have been able to sell the shares earlier.

63.   From June 4, 2018 to September 11, 2018, FCE's stock price decreased by over 45%, from $23.28 to $12.724 (adjusted for splits).  As a result, PE realized a loss of over $1,000,000.00 from its inability to sell its shares due to FCE's unjustified and unlawful delays.

64.   Accordingly, PE has been substantially damaged as a direct and proximate result of FCE's aforementioned conduct.

## COUNT II

### (Violation of 6 Del. C. § 8-401)

65.   PE repeats and realleges the allegations of paragraphs 1-64 of this Complaint as if fully set forth herein.

66.   FCE was the issuer of the shares of common stock to PE.

67.   PE met all of the statutory prerequisites for removal of the restrictive legend, triggering FCE's duty to remove the restrictive legend.

68.   PE presented the shares and provided a Rule 144 opinion letter, incorporating any revisions requested by FCE, and all of the requested documentation in order to have the restrictive legend removed from the shares, triggering FCE's duty to remove the restrictive legends.

69.   After PE followed up and communicated with FCE, it became obvious that there was no justification for FCE's delay in removing the restrictive legends, and FCE's delay was unreasonable.

70.   From June 4, 2018 to September 11, 2018, FCE's stock price decreased by over 45%, from $23.28 to $12.72 (adjusted for splits).   As a result, PE realized a loss of over $1,000,000.00 from its inability to sell its shares due to FCE's unjustified and unlawful delays.

71.   As a result of FCE's unreasonable delay, PE was unable to sell the shares it owned in a timely manner, and was forced to sell its shares later at a substantially reduced price.

72.   FCE is liable for any and all loss incurred by PE resulting from preventing the removal of the restrictive legend contained on the share certificate owned by PE.

73.   Had FCE removed the restrictive legend, PE would have been able to sell the shares earlier and at a significantly higher price.

74.   Accordingly, PE has been substantially damaged as a direct and proximate result of FCE's aforementioned conduct.

## COUNT III

### *(Violation of 8* **Del. C.** *§ 158)*

75.   PE repeats and realleges the allegations of paragraphs 1-74 of this Complaint as if fully set forth herein.

76.   As a holder of FCE shares, PE is entitled to have a certificate signed by, or in the name of, the corporation by any two authorized officers of the corporation representing the number of shares registered in certificate form.

15

77.   By delaying the removal of the restrictive legend, FCE denied PE the certificates to which it was entitled under 8 *Del. C.* § 158.

78.   Had FCE provided PE the certificates to which it was entitled under 8 *Del. C.* § 158, PE would have sold its FCE shares earlier, and at a higher price.

79.   From June 4, 2018 to September 11, 2018, FCE's stock price decreased by over 45%, from $23.28 to $12.72 (adjusted for splits).  As a result, PE realized a loss of over $1,000,000.00 from its inability to sell its shares due to FCE's unjustified and unlawful delays.

80.   Accordingly, PE has been substantially damaged as a direct and proximate result of FCE's aforementioned conduct.

## COUNT IV

### *(Tortious Interference With Prospective Business Advantage)*

81.   PE repeats and realleges each and every allegation contained in paragraphs 1-80 above as if fully set forth herein.

82.   PE had a reasonable expectation of economic advantage from a prospective contractual relationship through the intended sale of its shares of common stock of FCE to third party purchasers in the trading market for FCE's common stock.

83.   FCE knew, or should have known, that PE intended to sell its shares of common stock of FCE in light of PE's repeated requests for information concerning the process for the removal of the restrictive legends.

84.   FCE interfered with this prospective contractual relationship between PE and third party purchasers of PE's shares of FCE stock by intentionally and deliberately failing to reasonably and timely respond to PE's request regarding the removal of restrictive legends.

16

85.   FCE's delay was dishonest, unfair, and/or improper.

86.   FCE's failure to reasonably and timely respond to PE's requests regarding the removal of restrictive legends or reasonably and timely advise as to the manner in which FCE intended to effectuate the necessary actions to remove the restrictive legends contained on the share certificates owned by PE was intentional and without justification or excuse.

87.   As a result of FCE's failure, PE lost the prospective economic advantage with third party purchasers of the shares on the desired terms when PE first expected to be able to sell its shares.

88.   As a result of the loss of this prospective economic advantage with third party purchasers on the desired terms as available in the public trading market, PE suffered damages in excess of over $1,000,000.00, as the per share price of FCE declined from $23.28 per share to $12.72 per share between June 4, 2018 and September 11, 2018.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff PE respectfully requests that this Court enter an order:

(a)   Awarding all damages and losses suffered by PE as a result of FCE's conduct in an amount to be determined at trial, which exceed $1,000,000.00, as well as compensatory damages, consequential damages, punitive damages, interest, costs of suit, attorney's fees and any other relief deemed equitable by this Court as a result of FCE's tortious conduct; and

(b)   Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

17

Dated: September 14, 2020                     **ARNOLD & PORTER KAYE SCHOLER LLP**

By: /s/ James D. Herschlein
James D. Herschlein
Jonathan E. Green
250 West 55th Street
New York, New York 10019-9710
Telephone:  (212) 836-8000
Facsimile:   (212) 836-8689
Email: james.herschlein@arnoldporter.com
        jonathan.green@arnoldporter.com

James K. Lee
44th Floor, 777 South Figueroa Street
Los Angeles, CA 90017-5844
Telephone:  (213) 243-4000
Facsimile:   (212) 243-4199
Email: james.lee@arnoldporter.com

*Pro hac vice forthcoming*

*Attorneys for POSCO Energy Co., Ltd.*