# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

POSCO Energy Co., Ltd. f/k/a POSCO Power,

Plaintiff,

v.

FuelCell Energy, Inc.,

Defendant.

Case No.: 1:20-cv-07509-MKV

## MEMORANDUM OF LAW IN SUPPORT OF THE
## POSCO ENERGY'S OPPOSITION TO FUELCELL ENERGY, INC'S
## MOTION TO DISMISS THE COMPLAINT

**ARNOLD & PORTER KAYE SCHOLER LLP**
James D. Herschlein
Jonathan E. Green
250 West 55th Street
New York, New York 10019-9710
Telephone:   (212) 836-8000
Facsimile:   (212) 836-8689
Email:   james.herschlein@arnoldporter.com
         jonathan.green@arnoldporter.com

James K. Lee (*pro hac vice*)
44th Floor, 777 South Figueroa Street
Los Angeles, CA 90017-5844
Telephone:   (213) 243-4000
Facsimile:   (212) 243-4199
Email:   james.lee@arnoldporter.com

*Attorneys for POSCO Energy Co., Ltd.*

TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ....................................................................................................... 3

      A.     FCE Was Obligated To Ensure the Removal of Restrictive
           Legends From PE's Share Certificates ................................................... 4

      B.     Delaware Law Requires the Removal of Restrictive Legends Upon
           Request of the Stockholder ..................................................................... 6

      C.     PE Requested Removal of the Restrictive Legends, and FCE
           Responded by Engaging in a Campaign of Delay .................................. 6

ARGUMENT ........................................................................................................................ 8

I.     The Complaint Properly States Claims Under DGCL § 8-401 and §
      158 ....................................................................................................................... 9

      A.     The Motion to Dismiss Should Be Denied Because There Are
           Factual Questions as to When FCE Was Required to Remove the
           Restrictive Legend Under Delaware Law ............................................... 9

      B.     FCE Violated Section 8-401 by Unreasonably Delaying the
           Issuance of Unrestricted Stock Certificates ........................................ 12

      C.     Section 158 Is Not Limited to Injunctive Relief .................................. 15

II.    FCE Misstates the Complaint's Breach of Covenant Claim and
      Misapplies New York Law on Conditions Precedent ...................................... 15

III.   The Complaint Adequately Alleges a Tortious Interference With
      Prospective Business Advantage ..................................................................... 18

CONCLUSION .................................................................................................................... 20

TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*1199 Hous. Corp. v. Int'l Fid. Ins. Co.*,
    14 A.D.3d 383 (N.Y. App. Div. 2005) ...........................................................................16, 17

*Albemarle Theatre, Inc. v. Bayberry Realty Corp.*,
    27 A.D.2d 172 (N.Y. App. Div. 1967) ...................................................................................18

*Allis-Chalmers Mfg. Co. v. Malan Const. Corp.*,
    30 N.Y.2d 225 (N.Y. 1972) ..................................................................................................16

*Allocco Recycling, Ltd. v. Doherty*,
    378 F. Supp. 2d 348 (S.D.N.Y. 2005) ..................................................................................19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................9

*AYDM Assocs., LLC v. Town of Pamelia*,
    205 F. Supp. 3d 252 (N.D.N.Y. 2016), *aff'd*, 692 F. App'x 78 (2d Cir. 2017) ......................19

*Baraliu v. Vinya Capital, L.P.*,
    No. 07 CIV. 4626 (MHD), 2009 WL 959578 (S.D.N.Y. Mar. 31, 2009) ...............................17

*Bender v. Memory Metals, Inc.*,
    514 A.2d 1109 (Del. Ch. 1986)...................................................................... *passim*

*Campbell v. Liberty Transfer Co.*,
    No. CV-02-3084, 2006 WL 3751529 (E.D.N.Y. Dec. 19, 2006) ...........................................14

*CAPM Corp. v. Protegrity, Inc.*,
    No. C.A. 18676-NC, 2001 WL 1360122 (Del. Ch. Oct. 30, 2001) ........................................14

*Caravias v. Interpath Commc'ns, Inc.*,
    No. CIV.A. 3301-VCN, 2008 WL 2268355 (Del. Ch. May 28, 2008) ..................................15

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010)..............................................................................................9, 10

*Graham v. Commercial Credit Co.*,
    41 Del. Ch. 580 (1964) ..........................................................................................................15

*In re Executive Telecard. Ltd. Sec. Litig.*,
    913 F. Supp. 280 (S.D.N.Y. 1996) ..........................................................................................9

*In re Skat Tax Refund Scheme Litig.*,
    356 F. Supp. 3d 300 (S.D.N.Y. 2019) ...................................................................................18

*Jing Jing v. Weyland Tech, Inc.*,
   No. CV 17-446, 2017 WL 2618753 (D. Del. June 15, 2017) ..................................................13

*JW Acquisitions, LLC v. Shulman*,
   No. 1712-N, 2006 WL 4782399 (Del. Ch. Oct. 25, 2006) .......................................................14

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006) ....................................................................................................19

*Klita v. Cyclo3pss Corp.*,
   No. CIV.A. 15374, 1997 WL 33174421 (Del. Ch. Apr. 8, 1997) ...........................................15

*Kriss v. Bayrock Grp. LLC*,
   No. 10CIV3959LGSDCF, 2016 WL 7046816 (S.D.N.Y. Dec. 2, 2016) ...............................17

*Leonard Loventhal Account v. Hilton Hotels Corp.*,
   No. CIV.A.17803, 2000 WL 1528909 (Del. Ch. Oct. 10, 2000), *aff'd sub nom.*
   *Account v. Hilton Hotels Corp.*, 780 A.2d 245 (Del. 2001) ...................................................15

*Marsalis v. Schachner*,
   01 Civ. 10774(DC), 2002 WL 1268006 (S.D.N.Y. June 6, 2002) ...........................................9

*Mehrhof v. Monroe-Woodbury Cent. Sch. Dist.*,
   168 A.D.3d 713 (N.Y. App. Div. 2019) .................................................................................19

*Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*,
   326 F. Supp. 3d 26 (S.D.N.Y. 2018) ......................................................................................11

*Nash v. Coram Healthcare Corp.*,
   No. 96 CIV. 0298 (LMM), 1996 WL 363166 (S.D.N.Y. June 28, 1996) ...............................14

*Oppenheimer & Co. v. Oppenheim Appel, Dixon & Co.*,
   86 N.Y.2d 685 (N.Y. App. Div. 1995) ...................................................................................17

*Planète Bleue Télévision, Inc. v. A&E Television Networks, LLC*,
   No. 16 CIV. 9317 (PGG), 2018 WL 10579873 (S.D.N.Y. Sept. 19, 2018) ...........................17

*POSCO Energy Co., Ltd. v. FuelCell Energy, Inc.*,
   Del. Ch., C.A. No. 2020-0713-MTZ, Zurn, V.C. (Oct. 22, 2020) (Letter Op.).......................10

*Redwing Constr. Co. v. Sexton*,
   181 A.D.3d 1027 (N.Y. App. Div. 2020) ...............................................................................17

*Robb Evans & Assocs. LLC v. Sun Am. Life Ins.*,
   No. 10 CIV. 5999 GBD, 2012 WL 488257 (S.D.N.Y. Feb. 14, 2012)....................................17

*S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*,
   108 A.D.2d 351 (N.Y. App. Div. 1985) ..................................................................................18

*United Res. Recovery Corp. v. Ramko Venture Mgmt., Inc.*,
 584 F. Supp. 2d 645 (S.D.N.Y. 2008) ...................................................................17

*Utica Mut. Ins. Co. v. Clearwater Ins. Co.*,
 906 F.3d 12 (2d Cir. 2018).....................................................................................17

*White Winston Select Asset Funds, LLC v. Prof'l Diversity Network, Inc.*,
 No. SUCV201803878BLS1, 2019 WL 2605707 (Mass. Super. May 31, 2019).........13, 14, 15

## Statutes

6 *Del. C.* § 8-401 .................................................................................... *passim*

8 *Del. C.* § 158 ...........................................................................................6, 9, 15

## Other Authorities

17 C.F.R. § 230.144 ................................................................................ *passim*

17 C.F.R. § 230.506 ...............................................................................................3, 4

Fed. R. Civ. P. 8(a)(2).............................................................................................8

Fed. R. Civ. P. 12(b)(6)..........................................................................................2, 9

CPLR 3015 ...............................................................................................16, 17

Plaintiff POSCO Energy Co., Ltd. (Plaintiff, or "PE") respectfully submits this memorandum of law in support of its opposition to the Motion to Dismiss the Complaint of Defendant FuelCell Energy, Inc. (Defendant, or "FCE"). Plaintiff's Complaint sufficiently states all causes of action, and Defendant's arguments rely on mistakes of law or disputes of fact that cannot be resolved at this stage of litigation. Accordingly, Defendant's motion should be denied.[1]

## PRELIMINARY STATEMENT

The Complaint details the facts of Defendant FCE's unlawful campaign to hinder and delay Plaintiff PE from selling shares of FCE stock. As PE will establish at trial, FCE feared that a divestiture by PE—once FCE's largest minority shareholder—would negatively impact the price of its stock and cause significant embarrassment to FCE. On June 4, 2018, Plaintiff, an owner of 30,786,418 shares of FCE stock bearing a restrictive legend, sought to sell some of its shares following the expiration of the holding period, and requested that such legend be removed. Rather than complying with PE's ministerial request, which should have taken no more than a few days, FCE engaged in a series of dilatory and obstructive tactics designed to prevent PE from exercising its lawful rights as a stockholder. It was not until September 11, 2018—*more than three months after PE's initial request*—that FCE finally relented and issued the new stock certificates without the restrictive legend.

Among other wrongful tactics, FCE demanded that PE provide a written representation that it did not possess any material nonpublic information. The Complaint alleges that this demand served as mere pretext for delay. FCE was well aware that PE had no obligation to provide any such representation, as evidenced by the fact that FCE ultimately agreed to remove the restrictive

---

[1]   "¶__" refers to the paragraphs of the Complaint; and "FCE Br. __" refers to the Memorandum of Law in Support of FuelCell Energy, Inc.'s Motion to Dismiss the Complaint.

legend without any material nonpublic information representation from PE.  But by then, the damage had been done.  Between June 4 and September 11, 2018, the price of FCE stock plummeted from $23.28 to $12.72 per share, causing PE over one million dollars in losses.  FCE's motion ignores altogether PE's well-pleaded allegations that FCE delayed issuing shares through its pretextual requirement for a material nonpublic information representation.

In its motion, rather than establishing that dismissal is warranted based on the allegations of the Complaint, FCE presents its own factual narrative, which is contrary to the allegations of the Complaint.  Federal Rules of Civil Procedure ("FRCP") 12(b)(6) directs that a court accept as true all well-pleaded allegations, and thus FCE's factual creation—with a selective assortment of documents that it improperly attaches to its motion—should be rejected for this reason alone.  At best, FCE's factual assertions underscore that there are significant factual disputes to be decided by the trier of fact and discovery is necessary, including regarding whether FCE's insistence on the material nonpublic information representation was legitimate and whether its delay in removing the restricted legend was reasonable.

Moreover, Defendant's argument that it had no duty to remove the restrictive legend under the Delaware statutes because PE did not deliver the original stock certificate and Rule 144 opinion letter from counsel is meritless and seeks to excuse FCE's misconduct when it improperly told PE it would not remove the legend without a material nonpublic information representation.  The motion invites the Court to predict—without discovery of any sort—that FCE would have removed the legend earlier, contrary to its repeated demands for a material nonpublic information representation, if only PE just ignored FCE's demands and presented the stock certificates.  Not surprisingly, FCE cites no law warranting such relief.  FCE further relies on the incorrect provision in the parties' Securities Purchase Agreements ("SPAs") to argue that PE failed to allege a

2

condition precedent—where there is no condition precedent under the correct provision actually alleged in the Complaint, and New York law clearly provides that no condition precedent need be alleged.

Finally, for PE's tortious interference with prospective business advantage claims, FCE presents a hodgepodge of miscellaneous arguments, none of which have merit.  While FCE argues that the tortious interference with prospective business advantage claim should be dismissed for being duplicative, the claim is actually alleged in the alternative.  Furthermore, FCE's argument that no specific third-party relationship has been identified ignores the realities of securities trading on listed exchanges, which, definitionally, involves anonymous third-party purchasers.  FCE's motion apparently takes no issue with PE's allegations that FCE's interference was dishonest, unfair, or improper by alleging that FCE improperly demanded a representation that PE did not possess any material nonpublic information, when such a demand was transparently pretextual and designed to delay the removal of the restrictive legends.

## STATEMENT OF FACTS

On February 7, 2007, June 9, 2009, and April 30, 2012, PE purchased a total of 30,786,418 shares of FCE, a publicly traded company listed on the Nasdaq, pursuant to three separate SPAs. ¶ 14.  Because these shares were purchased in a private placement, as opposed to a registered public offering of securities, the shares were required to conform to the requirements of Rule 506 of Regulation D, which provides exemptions from registration for companies when they offer and sell securities.  ¶ 19.  Shares issued under Rule 506 are restricted unless the requirements of Rule 144 are met.  Among other things, Rule 506 and Rule 144 require that purchasers hold their shares for six months, and to ensure that shares are not sold prematurely, stock certificates typically come with a restrictive legend indicating that they may not be resold.  *See* 17 C.F.R. § 230.506; 17 C.F.R.

§ 230.144(d)(1).  Thus, in order to sell its shares of FCE stock, PE needed FCE to instruct its transfer agent to issue PE new share certificates with the restrictive legends removed.  Both the SPAs and Delaware law require PE to cooperate in the removal of these legends.  *See, e.g.*, ¶¶ 21-23.  As discussed below, FCE violated its obligations under both the SPAs and Delaware law, resulting in substantial harm to PE.

### A.    FCE Was Obligated To Ensure the Removal of Restrictive Legends From PE's Share Certificates

Plaintiff PE engages in a wide range of business activities in the energy sector, including the supply of energy, off-gas combined cycle power generation, coal-fired power generation, fuel cell development, renewable energy, and the recycling of resources.  ¶ 12.  PE is Korea's largest independent power producer.  *Id.*

PE is an investor in Defendant FCE, which, according to filings with the U.S. Securities and Exchange Commission, is a company that markets and sells a proprietary, molten-carbonate fuel cell technology.  ¶ 13.  Between 2007 and 2012, pursuant to three SPAs, Plaintiff purchased 30,786,418 shares of FCE stock.  ¶ 14.  The stock certificates bore a restrictive legend because PE acquired them directly from FCE in a private placement made pursuant to Rule 506 of Regulation D.  ¶ 19.  The SPAs also contained representations, warranties, and covenants that required FCE to facilitate the removal of the restrictive legends.  *See, e.g.*, ¶¶ 19-23, SPA §§ 3.8, 6.6, 4.8.

First, each of the three SPAs contained an identical § 3.8(b), which states that PE may request that FCE remove, and that FCE agrees to remove, the restrictive legends "if such Shares are eligible for sale without restrictions under Rule 144 or under any no-action letter issued by the SEC."  SPA § 3.8(b).  The same provision further states:

> Following the time a legend is no longer required for any Shares hereunder, the Company will, no later than five (5) Business Days following the delivery by the Purchaser to the Company or the Company's transfer agent of a legended certificate representing such Shares, accompanied by such additional information as the Company or the Company's

transfer agent may reasonably request, deliver or cause to be delivered to the Purchaser a certificate representing such Shares that is free from all restrictive and other legends.

SPA § 3.8(b); ¶ 21.

Second, each of the three SPAs contained an identical § 6.6(1), which provides that FCE "shall cooperate" with PE

to facilitate the timely preparation and delivery of certificates (not bearing any restrictive legend) representing the Registrable Securities to be offered pursuant to a Registration Statement and enable such certificates to be in such denominations or amounts, as the case may be, as such Holder may reasonably request and registered in such names as such Holder may request.

SPA § 6.6(l); ¶ 22.

Third, each of the three SPAs contained an identical § 4.8, pursuant to which FCE covenanted that "[f]rom and after the date hereof, the Company shall use its reasonable best efforts to obtain as promptly as practicable any consent or approval of any Person, including any regulatory authority, required in connection with the transactions contemplated hereby."  SPA § 4.8; ¶ 23.  Accordingly, SPA § 4.8 requires FCE to "use its reasonable best efforts to obtain as promptly as practicable" any consents or approvals required to remove the restrictive legend from the stock certificates upon PE's request, as the SPAs expressly contemplated that the stock PE purchased pursuant to the agreements would eventually be resold.  *Id.*

The three SPAs additionally provide PE with certain rights relating to its ownership of shares, including the right to appoint an individual to FCE's Board of Directors upon the satisfaction of certain qualifications and the right to subscribe to new issuances on particular terms. SPA §§ 4.15, 4.17; ¶¶ 24-26.  Each of the three SPAs also expressly state that "covenants contained herein shall survive the execution of this Agreement and the Closing of the transactions contemplated hereby (except to the extent expressly provided in this Agreement)."  *See* SPA § 7.13; ¶ 27.

B.    **Delaware Law Requires the Removal of Restrictive Legends Upon Request of the Stockholder**

Because FCE is incorporated in Delaware, claims made under the Uniform Commercial Code ("UCC") proceed under Delaware law.  ¶ 31.  It is undisputed that under Delaware law, stockholders have the right to obtain certificates without restrictive legends when certain conditions are met, as established by 6 *Del. C.* § 8-401 and 8 *Del. C.* § 158.  ¶ 32.  Section 158 provides that "[e]very holder of stock represented by certificates shall be entitled to have a certificate signed by, or in the name of, the corporation by any 2 authorized officers of the corporation representing the number of shares registered in certificate form."  Section 158 "[b]y necessary implication" also provides shareholders with the "right to a proper certificate without a legend or restriction, where such a legend is no longer appropriate."  *Bender v. Memory Metals, Inc.*, 514 A.2d 1109, 1115 (Del. Ch. 1986).  ¶ 33.  In addition to Section 158, Section 8-401(a) provides for an issuer's obligation to register transfer of a security upon request of a stockholder.  ¶ 34.  Similarly to Section 158, Section 8-401 also applies to removal of a restrictive legend because a removal is deemed a registered transfer.  *Id.*; *Bender*, 514 A.2d at 1115.  Section 8-401(b) provides for damages for "loss resulting from unreasonable delay in registration or failure or refusal to register the transfer."  ¶ 35.

C.    **PE Requested Removal of the Restrictive Legends, and FCE Responded by Engaging in a Campaign of Delay**

With the trade restriction period having long expired, on June 4, 2018, PE requested that FCE remove the restrictive legend on the shares.  ¶ 38.  Complying with this request typically takes a few days, but instead, FCE began a months-long campaign of delay.  ¶¶ 39-54.  FCE dragged its feet in responding, requiring PE to follow up numerous times.  Following PE's June 4 request, FCE informed PE that it had forwarded PE's request to FCE's external counsel for review.  ¶ 39.  Hearing no response, on June 11, 2018, PE again requested that FCE remove the restrictive

legends and for FCE to provide PE with any necessary procedures to remove the restrictive legends.  ¶ 40.  After several more days of no progress, on June 14, 2018, PE followed up once more by asking FCE to share any documentation required by FCE to remove the restrictive legend. ¶ 41.

FCE refused to remove the restrictive legend, despite its obligations to do so under Delaware law and the SPAs.  ¶ 42.  Instead, FCE sought to impose a variety of conditions that PE purportedly had to meet before FCE would agree to remove the restrictive legend, which had the intended effect of delaying PE's sale of its FCE stock.  *Id.*  Among FCE's unreasonable tactics was a baseless demand that PE certify that it was not in possession of material nonpublic information relating to FCE (a fact that is conspicuously absent from FCE's motion.).  ¶¶ 43-44. This demand served no legitimate purpose.

Over the course of the next couple of months, PE repeatedly attempted to secure the removal of the restrictive legend from its stock certificates, including by offering—on July 20, 2018—to agree to FCE's demand that PE permanently waive its bargained-for board member appointment right pursuant to Section 4.17 of the 2012 SPA.  ¶ 50.  During this period, FCE's stock price fell precipitously.  Between June 4, 2018 to July 3, 2018 alone, FCE's stock price fell from a split-adjusted price of $23.28 to $16.20, and the price continued to decline over the next two months.  ¶ 47.  In an apparent attempt to prevent further declines to its stock price, FCE continued to drag its feet and to withhold its consent to removing the restrictive legend.  ¶ 51.

Eager to sell its shares, on August 17, 2018, PE sent FCE a draft letter waiving its board appointment rights and a representation letter under Rule 144.  ¶ 51.  Although not set out in Rule 144, transfer agents and issuers require an opinion of counsel as to the application of Rule 144 prior to removing the legend from securities and allowing their sale under Rule 144.  *See, e.g.,*

*Bender*, 514 A.2d at 1116 ("Since the plaintiff's shares were not registered, an opinion of counsel was required for a transfer to occur"). Because it had no legal obligation to do so, PE's Rule 144 letter did not represent that it lacked material nonpublic information regarding FCE. Tellingly, despite its earlier insistence on this representation, FCE did not object to this omission, thereby demonstrating that its request was a mere ruse to discourage PE from selling its stock. ¶ 51. On August 22, 2018, PE entered into a letter waiving its board appointment rights under SPA § 4.17, pursuant to which it acceded to FCE's other demands in order to effectuate the removal of the restrictive legends as expeditiously as possible. ¶ 52.

Even after the signature of the waiver letter, FCE engaged in further dilatory tactics, and failed to remove the restrictive legend from PE's stock certificates for yet another two weeks after the signing of the waiver letter. It was not until September 11, 2018 that FCE's stock transfer agent finally notified PE that the stock could now be transferred. ¶ 53. In the end, FCE took more than three months to fulfill its statutory and contractual obligations. *Id.* During the period of this delay, FCE's stock price declined over 45%, resulting in significant losses to PE. ¶¶ 55-57. Following the removal of the restrictive legends, PE sold a total of 1,800,000 shares at prices ranging from $6.72 to $8.51. ¶ 55. As a result, PE realized a loss of over $1,000,000.00 from its inability to sell its shares due to FCE's unjustified and unlawful delays. ¶ 57.

## ARGUMENT

All that is required under Rule 8(a)(2) of the FRCP is that a claim for relief contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citation omitted). Courts must "accept [] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110 (2d Cir. 2010). As discussed below, PE easily meets the pleading standards.

## I.        The Complaint Properly States Claims Under DGCL § 8-401 and § 158

Under Delaware law, stockholders have the right to obtain certificates without restrictive legends when certain conditions are met. *See* 6 *Del. C.* § 8-401 and 8 *Del. C.* § 158. ¶ 32. Section 158 provides that "[e]very holder of stock represented by certificates shall be entitled to have a certificate signed by, or in the name of, the corporation by any 2 authorized officers of the corporation representing the number of shares registered in certificate form." Section 158 "[b]y necessary implication" also provides shareholders with the "right to a proper certificate without a legend or restriction, where such a legend is no longer appropriate." *Bender*, 514 A.2d at 1115; ¶ 33. Section 8-401(a) additionally provides for an issuer's obligation to register transfer of a security upon request of a stockholder. ¶ 34. Similarly to Section 158, Section 8-401 also applies to removal of a restrictive legend because a removal is deemed a registered transfer. *Id.*; *Bender*, 514 A.2d at 1115. Section 8-401(b) provides for damages for "loss resulting from unreasonable delay in registration or failure or refusal to register the transfer." ¶ 35.

### A.        The Motion to Dismiss Should Be Denied Because There Are Factual Questions as to When FCE Was Required to Remove the Restrictive Legend Under Delaware Law

As a preliminary matter, FCE improperly asks the Court to determine questions that are inherently factual in nature and that cannot be decided upon on a motion to dismiss under Rule 12(b)(6) of the FRCP. *See, e.g.*, *In re Executive Telecard. Ltd. Sec. Litig.*, 913 F. Supp. 280, 286 (S.D.N.Y. 1996) ("[T]his claim presents disputed factual issues that cannot be decided within the confines of a motion to dismiss."); *Marsalis v. Schachner*, 01 Civ. 10774(DC), 2002 WL 1268006,

at *4 (S.D.N.Y. June 6, 2002) ("[T]he grounds asserted in [the] motion raise factual issues that cannot be resolved on a motion to dismiss."). For instance, Defendant invites the Court to question FCE's intent for bringing this lawsuit by raising disputes between the parties that are extraneous and irrelevant to this proceeding.[2]  FCE Br. at 3-6.

More importantly, Defendant argues that the Complaint should be dismissed because it fails to allege precisely when POSCO satisfied the relevant prerequisites under 6 *Del. C.* § 8-401. FCE Br. at 11. By cherry-picking a handful of correspondence to present to the Court—which are not representative of the full factual record between the parties—Defendant purports to demonstrate that PE did not satisfy the alleged prerequisites of furnishing the original stock certificates and a Rule 144 opinion from counsel until late August 2018. Defendant erroneously suggests that the Complaint should be dismissed because these documents were not provided on June 4, 2018, when PE made its initial request for FCE to remove the restrictive legend from its stock certificates.[3]  FCE Br. at 11. Rather than establishing that the dismissal of the Complaint is

---

[2]     Not only is this saga irrelevant, FCE has resorted to similar distractions and attacks in the parties' other disputes by mischaracterizing PE's motivations, including by lodging multiple, frivolous demands for sanctions. Indeed, Vice Chancellor Zurn's rebuke of FCE sums up a Delaware action in which FCE also filed a meritless motion to dismiss:

> FuelCell has invoked Court of Chancery Rule 11 casually and repeatedly in this matter. . . . it is distracting, detrimental to the famed collegiality of the Delaware bar, and counterproductive to the "just, speedy and inexpensive determination" of judicial proceedings to summon Rule 11 in rhetoric.

*POSCO Energy Co., Ltd. v. FuelCell Energy, Inc.*, Del. Ch., C.A. No. 2020-0713-MTZ, Zurn, V.C. (Oct. 22, 2020) (Letter Op.), at 6.

[3]     Defendant improperly asked the Court to take judicial notice of correspondence that it seeks to introduce, none of which is attached to the Complaint. A district court may typically consider only "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by refence in the complaint." *DiFolco*, 622 F.3d at 111. To introduce a document that is not incorporated by reference, Defendant must establish that "the complaint 'relies heavily upon its terms and effect,' thereby rendering the document integral to the complaint," and "'even if a document is 'integral' to the complaint, it must be clear on the record
*Footnote continued on next page.*

warranted based on the allegations therein, Defendant's motion succeeds only in raising factual questions that must be resolved with the benefit of discovery.

Defendant conveniently ignores the crux of PE's allegations.  FCE was required to promptly remove the legend after PE's June 4, 2018 request.  Instead of doing so, Defendant purposefully engaged in a campaign of delay in order to prevent PE from selling its stock—which, due to PE's status as Defendant's largest outside stockholder at the time, would have had a detrimental impact on Defendant's already-dwindling stock price.  This campaign relied on unreasonable demands that PE provide a representation, among others, that it did not possess any material nonpublic information relating to FCE.  As set forth in the Complaint, PE initially asked FCE to remove the restrictive legend on June 4, 2018.  ¶ 38.  After a week went by without any substantive response, on June 11, PE sent FCE a second request and asked about the procedures required to remove the restrictive legend.  ¶ 40.  On June 14, after PE followed up once more regarding the procedural requirements, FCE demanded, among other things, that PE represent that it did not possess any material nonpublic information relating FCE, making clear that it would refuse to issue the delegended certificates unless its requirements were met.  ¶¶ 41-44.  Despite multiple subsequent attempts by PE to secure the release of the unrestricted certificates, Defendant did not budge from this unreasonable position until more than two months later.  ¶¶ 51-52.  Until PE consented to remove the legends on August 22, 2018, any attempt by PE to furnish the original

_____

that no dispute exists regarding the authenticity or accuracy of the document,'" and "there exist[s] no material disputed issues of fact regarding the relevance of the document."  *Id.* (citations omitted).  The e-mails that plaintiff has cherry-picked do not reflect the full evidentiary record and thus, there is a material dispute as to their relevance.  *See id.* at 112-13 (reversing district court's decision to consider emails in a breach of contract dispute where such documents were ambiguous as to their meaning, finding that "the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"); *see also Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 33 (S.D.N.Y. 2018) (factual issues precluded the consideration of emails on a motion to dismiss).

certificates or the Rule 144 opinion would have been futile. This sequence of events raises multiple questions of fact relating to communications, dates, and actions taken or not taken.

FCE's demand for a representation that PE lacked material nonpublic information relating to FCE had no basis in law or fact, and it is therefore reasonable to infer that the demand itself was nothing more than a ruse to delay the negative impact that PE's sales would have had on FCE's stock price, and to avoid the embarrassment of PE's divestiture. Indeed, it is telling that FCE has not even attempted to justify this unreasonable demand. This is perhaps because, as FCE is surely aware, use of material nonpublic information by a stockholder does not involve the issuer, or create a risk of liability for the issuer, and an issuer therefore has no legitimate basis for requiring a representation that a stockholder does not possess any material nonpublic information. ¶ 44. FCE's demand for this representation was not a "reasonabl[] request" in the language of SPA § 3.8(b). ¶ 21.

## B. FCE Violated Section 8-401 by Unreasonably Delaying the Issuance of Unrestricted Stock Certificates

The Complaint properly states a claim under 6 *Del. C.* § 8-401. As discussed above, FCE's argument that it had no duty to issue the unrestricted stock certificates because PE did not furnish the original stock certificates and a Rule 144 letter at the time of its initial request is untenable. It is uncontested that on June 14, 2018, FCE explicitly informed PE that *it would not issue the delegended certificates* unless its pretextual conditions were met. ¶ 42. FCE would have the Court believe that, if PE were to have ignored FCE's illegitimate demands and tendered the original certificate along with any Rule 144 opinion letter, FCE would have promptly removed the restrictive legend notwithstanding its own statements to the contrary. That is pure fiction; but more importantly, FCE asks the court to draw a baseless and impermissible inference in resolving a motion to dismiss. An issuer cannot evade liability under 6 *Del. C.* § 8-401 or any other

applicable laws by protesting that a stockholder failed to meet the statutory requirements when the issuer makes clear that any attempt to do so would be futile.

Defendant unreasonably delayed the issuance of delegended stock certificates until September 11, 2018 in an effort to dissuade PE from selling its shares in violation of 6 *Del. C.* § 8-401.  Its argument that it had no duty to remove the restrictive legend because its own wrongful refusal prevented PE from supplying the original certificates and the Rule 144 opinion letter at an earlier date is meritless and disingenuous.  *White Winston Select Asset Funds, LLC v. Prof'l Diversity Network, Inc.*, No. SUCV201803878BLS1, 2019 WL 2605707 (Mass. Super. May 31, 2019) is instructive.  Just like in this case, the defendant in *White Winston* wrongfully refused plaintiff's initial request for the issuance of new stock certificates without the restrictive legend on the purported basis that defendant possessed material nonpublic information, and delayed the issuance of the clean certificates until more than three months after plaintiff's initial request, by which time plaintiff's opportunity to sell the shares at favorable prices had passed.  *Id.* at *1-2. The court noted as a preliminary matter that the issue of whether plaintiff engaged in delay because it "feared that the sale of [defendant's] large block would depress share prices" "remains for factual development through discovery."  *Id.* at *2.

Also just like FCE's position here, the *White Winston* defendant relied upon *Jing Jing v. Weyland Tech, Inc.*, No. CV 17-446, 2017 WL 2618753 (D. Del. June 15, 2017) to argue that it had no duty under 6 *Del. C.* § 8-401 to remove the restrictive legend because plaintiff did not present the original stock certificates.  The court held that, "[i]f presentment is generally a precondition to a request for unlegended certificates, [plaintiff] may well be able to prove that [defendant] is estopped by its behavior from relying on that condition," and "to the extent that the *Jing Jing* decision was intended to announce a general new pleading obligation of presentment in

circumstances like those alleged in this case, this court declines to adopt it." *White Winston*, 2019 WL 2605707 at \*3.  In doing so, the court distinguished *Jing Jing* on the basis that, unlike in *White Winston*—or here—"there was a substantial issue as to who rightfully owned and held the legended shares in dispute," and that well-established authority from the Delaware Chancery Court "make[] no reference to an obligation to plead presentment (something that may certainly be required of a security holder before a new certificate is delivered)." *Id.* (citing *Bender*, 514 A.2d 1109).  Based on the foregoing, the *White Winston* court denied plaintiff's motion in its entirety.  *White Winston*, 2019 WL 2605707 at \*4.  This Court should reach the same conclusion.[4]

Defendant's argument that PE has not adequately alleged that it has satisfied the seven statutory prerequisites, including whether the transfer was "rightful," under Section 8-401 is similarly misguided.  Those are defenses, not pleading requirements.  And as the cases cited by FCE demonstrate, any questions regarding whether PE has established that it has satisfied those conditions are reserved for after the parties have had the benefit of discovery.  *See, e.g.*, *CAPM Corp. v. Protegrity, Inc.*, No. C.A. 18676-NC, 2001 WL 1360122 (Del. Ch. Oct. 30, 2001) (decision on a summary judgment motion); *Bender.*, 514 A.2d at 1116  (same); *Campbell v. Liberty Transfer Co.*, No. CV-02-3084, 2006 WL 3751529, at \*1 (E.D.N.Y. Dec. 19, 2006) (decision on a post-trial motion for entry of judgment); *JW Acquisitions, LLC v. Shulman*, No. 1712-N, 2006 WL 4782399, at \*1 (Del. Ch. Oct. 25, 2006) (decision on motion for entry of judgment).

---

[4]     *Nash v. Coram Healthcare Corp.*, No. 96 CIV. 0298 (LMM), 1996 WL 363166 (S.D.N.Y. June 28, 1996) is inapposite.  In *Nash*, the plaintiff sought to amend the complaint to add a breach of common law duty under New York law based on the existence of 6 *Del. C.* § 8-401.  Plaintiff was unable to avail itself of the statutory remedy, apparently because the shares were not in registered form.  *Id.* at \*2.  Accordingly, any statements made by the *Nash* court regarding 6 *Del. C.* § 8-401 were mere dicta.

Further, unlike in the cases cited by Defendant, there is no dispute that PE eventually furnished the original certificates and the Rule 144 opinion letter.  As discussed in Section I.A, at best, FCE has succeeded in establishing that there is a question of fact as to whether it acted reasonably and promptly in response to PE's request.

Accordingly, it is inappropriate to address such issues at this juncture and FCE's motion should be denied.

### C.   Section 158 Is Not Limited to Injunctive Relief

FCE's argument that PE fails to state a claim under 8 *Del. C.* § 158 also fails.  FCE is wrong that an action under 8 *Del. C.* § 158 offers only equitable relief.  FCE Br. at 20-21.  While FCE cites cases granting injunctive relief under Section 158, the language of Section 158 does not state that the only remedy is in equity.  The mere availability of injunctive relief does not preclude the possibility of damages.  Indeed, FCE does not cite any cases refusing to grant damages on Section 158 claims; at best, FCE's cases merely state that the plaintiffs in those cases *seek* injunctive relief, or that it is *possible* to award injunctive relief for a Section 158 claim.  *See Leonard Loventhal Account v. Hilton Hotels Corp.*, No. CIV.A.17803, 2000 WL 1528909, at *8 (Del. Ch. Oct. 10, 2000), *aff'd sub nom. Account v. Hilton Hotels Corp.*, 780 A.2d 245 (Del. 2001); *Bender*, 514 A.2d at 1115; *Klita v. Cyclo3pss Corp.*, No. CIV.A. 15374, 1997 WL 33174421, at *2 (Del. Ch. Apr. 8, 1997); *Graham v. Commercial Credit Co.*, 41 Del. Ch. 580, 584 (1964); *Caravias v. Interpath Commc'ns, Inc.,* No. CIV.A. 3301-VCN, 2008 WL 2268355, at *3 (Del. Ch. May 28, 2008).  In contrast, at least one court has found that a plaintiff adequately stated a claim for damages under 8 *Del. C.* § 158 even though the defendant ultimately provided the plaintiff with delegended stock certificates, thereby rendering injunctive relief moot.  *White Winston Select Asset Funds, LLC*, 2019 WL 2605707, at *3.

Accordingly, Defendant's argument that PE's statutory claims should be dismissed is frivolous.

## II.   FCE Misstates the Complaint's Breach of Covenant Claim and Misapplies New York Law on Conditions Precedent

FCE's claims regarding PE's breach of covenant fail because (1) FCE's arguments are based on the wrong SPA provision; the Complaint brings a breach of covenant claim, not breach of contract; (2) under New York law, the Complaint need not allege conditions precedent at all, much less when conditions precedent occurred; and (3) even though the Complaint need not plead when the breach began to run, the Complaint does in fact allege that the breach began to run from the first request for removal of restrictive legends on June 4, 2018, ¶ 38.

As an initial matter, FCE mischaracterizes the Complaint's breach of covenant suit as a breach of contract suit based on Section 3.8(b) of the SPAs.  *See, e.g.,* FCE Br. at 12-15 ("The Complaint Fails to State a Claim for Breach of Contract.")  In fact, as clearly stated in the Complaint, PE's claim is a "breach of *covenant*" claim based on Section 4.8 of the SPAs.  ¶ 59; *see also* ¶ 23.  Section 4.8 states that "[f]rom and after the date hereof, the Company shall use its reasonable best efforts to obtain as promptly as practicable any consent or approval of any Person, including any regulatory authority, required in connection with the transactions contemplated here-by."  SPA ¶ 4.8; ¶¶ 23, 59.  There is no condition precedent in this breach of covenant provision. This fact alone is fatal to FCE's argument that the Complaint fails to allege conditions precedent with specificity.

Moreover, under New York law, the Complaint need not allege conditions precedent at all, much less *when* conditions precedent occurred.  New York Civil Practice Law and Rule ("CPLR") 3015(a) states that "[t]he performance or occurrence of a condition precedent in a contract need not be pleaded."  "In enacting CPLR 3015 (subd. [a]), the Legislature . . . eliminated any requirement that performance or occurrence of conditions precedent be pleaded."  *Allis-Chalmers Mfg. Co. v. Malan Const. Corp.*, 30 N.Y.2d 225, 232 (N.Y. 1972).  Courts have found that dismissing a complaint on the grounds that a plaintiff failed to allege compliance with conditions

precedent places an "improper pleading burden" on the plaintiff. *1199 Hous. Corp. v. Int'l Fid. Ins. Co.*, 14 A.D.3d 383, 384 (N.Y. App. Div. 2005); *see also Kriss v. Bayrock Grp. LLC*, No. 10CIV3959LGSDCF, 2016 WL 7046816, at *21 (S.D.N.Y. Dec. 2, 2016), *on reconsideration in part*, No. 10CIV3959LGSDCF, 2017 WL 1901966 (S.D.N.Y. May 8, 2017); *United Res. Recovery Corp. v. Ramko Venture Mgmt., Inc.*, 584 F. Supp. 2d 645, 657 (S.D.N.Y. 2008).

FCE does not cite a single New York state case that requires the pleading of a condition precedent at the motion to dismiss stage, where the "scope of a court's inquiry . . . is narrowly circumscribed." *1199 Hous. Corp.*, 14 A.D.3d at 384. For example, *Oppenheimer & Co. v. Oppenheim Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (N.Y. App. Div. 1995) is an appeal from a motion for judgment notwithstanding the verdict after a jury trial. *Redwing Constr. Co. v. Sexton*, 181 A.D.3d 1027 (N.Y. App. Div. 2020) and *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12 (2d Cir. 2018) are both appeals from summary judgment. And *Baraliu v. Vinya Capital, L.P.*, No. 07 CIV. 4626 (MHD), 2009 WL 959578 (S.D.N.Y. Mar. 31, 2009), *Robb Evans & Assocs. LLC v. Sun Am. Life Ins.*, No. 10 CIV. 5999 GBD, 2012 WL 488257 (S.D.N.Y. Feb. 14, 2012), and *Planète Bleue Télévision, Inc. v. A&E Television Networks, LLC*, No. 16 CIV. 9317 (PGG), 2018 WL 10579873 (S.D.N.Y. Sept. 19, 2018) are inapposite because they concern pleading under federal law, whereas PE's claims are governed by New York law. The SPAs contain a New York choice of law clause, *see* SPA ¶ 7.3; ¶ 10, and federal courts recognize that CPLR 3015 applies in cases under New York law that are before a federal court. *See, e.g., Kriss*, 2016 WL 7046816, at *21.

Finally, to the extent FCE argues that "plaintiff cannot plausibly allege unreasonable delay without alleging when the duty to act actually arose," FCE Br. at 14, the Complaint alleges that "[o]n June 4, 2018, PE requested that FCE remove the restrictive legends." ¶ 38. This is when

FCE's obligation to "use its reasonable best efforts" under Section 3.8(b) began.  *See id.* (describing June 4, 2018 request for removal of the restrictive legends).  Even though the Complaint need not plead when the breach occurred, the Complaint does, in fact, provide precisely such a date.[5]  FCE's bare claim that this is "not enough to state a claim based on FuelCell's alleged unreasonable delay" is an assertion, not an argument, and a flawed one at that.  FCE Br. at 14.

### III.   The Complaint Adequately Alleges a Tortious Interference With Prospective Business Advantage

FCE's arguments regarding PE's tortious interference with prospective business advantage claim misconstrues PE's arguments and are inadequate on the law.  FCE's argument that PE's tortious interference with prospective business advantage claim is "duplicative" of its other claims misses the point that this claim is pled in the alternative.  *See, e.g., In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 325 (S.D.N.Y. 2019) ("A claim is alternative and not duplicative if a plaintiff may fail on one but still prevail on the other.")  However, even if the Court finds for FCE on PE's statutory or breach of covenant claims, FCE may still have violated its common law legal duty extraneous to the contract.  "Although the same acts which constitute the basis for the first cause of action for breach of contract are re-alleged [in the tortious interference with performance of contract claim], the additional allegations that defendant maliciously withheld its consent or delayed such consent for its own benefit are sufficient affirmative action."  *S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 108 A.D.2d 351, 354 (N.Y. App. Div. 1985); *see also Albemarle Theatre, Inc. v. Bayberry Realty Corp.*, 27 A.D.2d 172, 177 (N.Y. App. Div. 1967) ("In the case at bar the . . . defendants, it is alleged, wilfully and intentionally improperly performed their

---

[5]    While Section 3.8(b) is not the basis of any claims in this case, PE, does, in fact, allege that the condition precedent in Section 3.8(b) is satisfied.  The Complaint expressly asserts that PE provided FCE with "a Rule 144 opinion letter from counsel, and the original share certificates."  ¶ 45.

contract . . . and did so, in connection with their other acts, in a manner calculated drastically to decrease its competitive position and value, to their own substantial benefit.  This constituted not only a breach of their contract with the plaintiff, but a violation of their legal common law duty extraneous to the contract not to act willfully to destroy the property of another, including the plaintiff.").

FCE's argument that PE "has not identified a specific business relationship, or a third party to whom it would have sold its shares" ignores the realities of securities trading on listed exchanges, which, definitionally, involves anonymous third-party purchasers.  FCE Br. at 24.  Not a single one of FCE's cases addresses the situation at issue in this case, where a party seeks to sell listed shares traded in significant volume on a public exchange.  *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (concerning negotiations over television content distribution deals); *AYDM Assocs., LLC v. Town of Pamelia*, 205 F. Supp. 3d 252, 274 (N.D.N.Y. 2016), *aff'd*, 692 F. App'x 78 (2d Cir. 2017) (concerning the lease or sale of townhouses); *Mehrhof v. Monroe-Woodbury Cent. Sch. Dist.*, 168 A.D.3d 713, 714 (N.Y. App. Div. 2019) (concerning an employment contract); *Allocco Recycling, Ltd. v. Doherty*, 378 F. Supp. 2d 348, 375 (S.D.N.Y. 2005) (concerning the Department of Sanitation's denial of a permit for a recycling center). Because sales on listed exchanges are anonymous, FCE's requirement that PE identify an individual potential purchaser of shares would preclude all claims for tortious interference with prospective business advantage where the relevant business relationship is the sale of listed securities on a public exchange.

Finally, the Complaint adequately alleges that FCE's interference was "dishonest, unfair, or improper."  FCE Br. at 25.  As the Complaint shows, FCE employed multiple stratagems to dishonestly, unfairly, and improperly delay the issuance of unrestricted legends to PE.  ¶¶ 38-54.

In particular, FCE illegitimately demanded that PE provide a representation that PE did not possess any material nonpublic information.  ¶¶ 43-44.  As described in the Complaint, such a claim was transparently pretextual, and was obviously done for the improper purpose of depriving PE of its bargained-for rights in an effort to avoid further reduction in FCE's flagging stock price.  ¶¶ 44, 51.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.  In the alternative, should the Court find that dismissal is warranted, Plaintiff respectfully requests that such dismissal be without prejudice and for leave to file an amended complaint to remedy any pleading defects.

Dated: November 18, 2020

**ARNOLD & PORTER KAYE SCHOLER LLP**

By: _____

James D. Herschlein
Jonathan E. Green
250 West 55th Street
New York, New York 10019-9710
Telephone:  (212) 836-8000
Facsimile:   (212) 836-8689
Email:    james.herschlein@arnoldporter.com
              jonathan.green@arnoldporter.com

James K. Lee (*pro hac vice*)
44th Floor, 777 South Figueroa Street
Los Angeles, CA 90017-5844
Telephone:  (213) 243-4000
Facsimile:   (212) 243-4199
Email:    james.lee@arnoldporter.com

*Attorneys for POSCO Energy Co., Ltd.*